

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEITH A. WEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06 C 4350 |
| | ) |
| ROGER E. WALKER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, correctional officials, violated the plaintiff's constitutional rights by acting with deliberate indifference to his health, safety and medical needs. More specifically, the plaintiff alleges that between February and May 2005, the defendants housed disruptive and mentally disturbed inmates at the Stateville Correctional Center who repeatedly set fires in the facility's segregation unit; he additionally contends that he was denied needed medical care following the fires. This matter is before the court for ruling on the defendants' motion to dismiss the complaint for failure to state a claim. For the reasons set forth in this order, the motion is granted only in part.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Fact pleading is not necessary to state a claim for relief. *Thompson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Federal Rule

of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, (1957)). To satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), the plaintiff need only state his legal claim and provide "some indication . . . of time and place." *Thompson*, 362 F.3d at 971. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.*, 127 S.Ct. at 1964 -65 (citations omitted).

In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts–as well as any inferences reasonably drawn therefrom–in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bell Atlantic Corp.*, 127 S.Ct. at 1955 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1, (2002). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Norfleet v. Vale*, No. 05 C 0926, 2005 WL 3299375, at *1 (N.D. Ill. Dec. 5, 2005) (Zagel, J.). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 127 S.Ct. at 1965. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996) (citations omitted).

## FACTS

The plaintiff alleges the following facts, which must be accepted as true for purposes of the motion to dismiss: During the time period in question, the plaintiff was temporarily housed in the F-House segregation unit at the Stateville Correctional Center on a court writ.

On February 7, 2005, certain inmates in F-House set fires in their cells. Defendant Lohaus, a lieutenant on duty at the time, allowed the fires to burn. Lohaus additionally refused the plaintiff's requests for emergency medical attention.

On March 9, 2005, more fires were ignited. Despite "billowing smoke," defendants Lohaus, Griffin, Morales and Jones allowed the fires to burn. No evacuation was initiated. Afterward, defendants Morales and Jones denied the plaintiff's calls for medical care.

On March 25, 2005, inmates with mental health problems and a history of disciplinary infractions set fires. Defendant Edmonds allowed the fires to burn and conducted no evacuation. Edmonds also denied the plaintiff access to the medical staff.

On April 7, 2005, inmates set more fires. Once again, the security staff allowed the fires to burn without taking any action or permitting the inmates to evacuate the building. Once again, the plaintiff was denied needed medical care.

On April 18, 2005, inmates set fires again and the fires were allowed to burn. The fire department was not called and the building was not evacuated. The plaintiff's pleas for medical attention were denied.

The same basic scenario played out on April 20, 2005.

On May 14, 2005, more fires were set. Defendants Wilson, Grant and Edwards allowed the fire to burn without making any effort to control the flames. Correctional officials took no action

against the culprits. As the fires burned "out of control" and smoke billowed "everywhere," Wilson, Grant and Edwards nonchalantly made jokes. The officers denied the plaintiff's requests for emergency medical attention.

On May 26, 2005, the same inmates lit three or four trash bins on fire. The bins, which were full of garbage, burned at "full blast" to such a degree that the smoke made it difficult to see. Defendants Wilson, Grant, Roberts and Edwards were "dancing" and did nothing to curb the fires or to help the inmates locked in their cells. The fires continued to burn throughout the second and third shifts, as third-shift employees Vaughn, Jones, Boseau, Brown and Williams took no action to quell the flames when they came on duty. Their only response was to cut off the power and water. Without water, the plaintiff was unable to cover his nostrils with a wet towel to prevent smoke inhalation, drink water, or wash the soot from his face. Furthermore, the unit was cast in total darkness. The fires lasted at least five hours. The correctional staff ignored the prisoners' screams for help.

The plaintiff suffered violent nausea, headaches, difficulty breathing, burning in his esophagus, and pain in his lungs as a result of the myriad fires. The plaintiff additionally fears that his exposure to carbon monoxide may result in future harm.

## DISCUSSION

Accepting the plaintiff's factual allegations as true, the court finds that the complaint states a colorable–if borderline–cause of action against the defendants. The complaint is dismissed only as to defendant Walker, and insofar as the remaining defendants are sued in their official capacities.

## I. INDIVIDUAL vs. OFFICIAL CAPACITY

The plaintiff cannot sue the defendants in their official capacities. The Eleventh Amendment bars private suits for damages against the State, state agencies, and state officials in their official capacities. *Joseph v. Board of Regents of University of Wisconsin System*, 432 F.3d 746, 748 (7th Cir. 2005) (citations omitted). Furthermore, the plaintiff cannot obtain injunctive relief, as he is no longer confined at the Stateville Correctional Center. If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be transferred back to that facility and again be subject to the alleged illegality. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (internal citations and quotations omitted). The plaintiff may proceed against the defendants only to the extent that they are sued in the individual capacities.

## II. PERSONAL INVOLVEMENT OF SUPERVISORY OFFICIALS

Furthermore, the complaint is dismissed as to IDOC Director Roger Walker. The plaintiff has alleged no facts suggesting Walker's direct, personal involvement, as required by *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Nor has the plaintiff indicated that the alleged violations of his constitutional rights occurred at Walker's direction or with his knowledge and consent. *Id.* Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).

The mere fact that Walker is the Director of the Department of Corrections is insufficient to establish liability, as the doctrine of *respondeat superior* (blanket supervisory liability) does not

apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Section 1983 does not create collective or vicarious responsibility. *Id.* To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.* In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). Because the plaintiff has failed to state any facts suggesting that Walker was personally involved in–or even aware of–the alleged circumstances giving rise to the complaint, Walker is dismissed as a defendant in this matter.

However, the plaintiff may proceed against Warden Battaglia. *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), teaches that dismissal of a *pro se* complaint on grounds of lack of active personal involvement is inappropriate where the official's position justifies an inference that the official had some direct involvement in the alleged violation. *Antonelli* concerned broad claims of unconstitutional conditions of confinement. In that case, the Court of Appeals found that an inference of involvement was justified to sustain claims asserted against certain senior officials, such as the county sheriff or the prison warden, where the claims alleged "potentially systemic," rather than "clearly localized," constitutional violations. *Id.* at 1428-29. In the case at bar, the plaintiff's claims focus on an apparently widespread and all-too-frequent problem of inmates in the segregation unit starting fires, with no official response. The complaint sets forth an arguable claim against Warden Battaglia, who was presumably aware of the situation and in a position to address the problem.

### III. Deliberate Indifference to the Plaintiff's Safety

The plaintiff will be permitted to further develop his claim that the remaining defendants acted with deliberate indifference to his health and safety. The Constitution imposes on jail officials a duty to "take reasonable measures to guarantee the safety of the inmates and to protect them from harm at the hands of others." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). To state an actionable Eighth Amendment claim, the plaintiff must plead that the defendant acted with deliberate indifference to the substantial risk of harm. The "deliberate indifference" standard is subjective. *Id.*

Certainly, housing inmates with "obvious mental health and disciplinary problems" in Stateville's segregation unit did not itself violate the plaintiff's constitutional rights. The very purpose of a maximum security prison facility is to hold the most dangerous and violent of offenders; by the same token, inmates are placed in the even higher-security disciplinary segregation unit if they commit rule infractions. Some level of aggression and miscreant behavior must be expected in the segregation unit of a maximum security prison. Correctional officials cannot be held liable for "an unfortunate random act" of misbehavior. *Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515, 519 (7th Cir. 2002)

That said, the complaint supports an inference that the defendants acted with deliberate indifference both to a pervasive problem of fires being set in the segregation unit, and to the health and safety of inmates when fires broke out. The complaint raises questions as to how fires were allowed to break out so frequently and whether the fires were serious enough to warrant an emergency response. The court will require some explanation as to what steps were taken to curb the rash of fires, or why nothing could have been done. *Compare Haley v. Gross*, 86 F.3d 630 (7th

7

Cir. 1996) (in civil rights action, evidence sustained jury determination that prison officials were deliberately indifferent to safety and welfare of prisoner who was severely burned when cellmate, who had been acting strangely, set their cell on fire after prisoner's pleas to be moved were ignored). The record will also require some clarification as to what safety measures, if any, were taken in response to the fires once they broke out (whether officers attempted to extinguish the fires, whether evacuation was considered but deemed unnecessary, etc.).

## IV. Deliberate Indifference to the Plaintiff's Medical Needs

The complaint also states a cognizable Eighth Amendment medical claim. It is well settled that correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the health care provider must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).

The court will assume for purposes of the motion to dismiss that the plaintiff's need for treatment of smoke inhalation amounted to a "serious" medical need. A medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention" may constitute a serious medical need. *Edwards v. Snyder*, 478 F.3d 827, 830-831 (7th Cir. 2007) (*quoting Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (indications of a serious medical need include the existence of chronic and substantial pain). In this case, the

8

plaintiff contends that he was violently nauseated, had difficulty breathing, and that he experienced burning in his esophagus and pain in his lungs. Because the plaintiff describes an arguably serious medical condition, the objective component is satisfied.

The plaintiff has also sufficiently pleaded the subjective component. To satisfy the subjective prong of deliberate indifference, the plaintiff must allege that the officer in question was aware of and consciously disregarded the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). The subjective element of deliberate indifference encompasses such conduct as denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002), *quoting Estelle*, 429 U.S. at 104. If the plaintiff was in the state he describes in his complaint, then he may be entitled to damages against the defendants for refusing his requests for medical attention. *See, e.g., Williams v. Liefer*, --- F.3d ----, 2007 WL 1932475, *4 (7th Cir. Jul. 5, 2007) (a jury could have concluded that a delay in medical treatment unnecessarily prolonged Plaintiff's pain and may have exacerbated his medical condition); *see also Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004) (recognizing that "hours of needless suffering" can constitute compensable harm).

## V. No Physical Injury

As the defendants point out, an inmate generally cannot recover compensatory damages without physical injury. Title 42, United States Code, Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Zehner v. Trigg*, 133 F.3d 459, 462-63 (7th Cir. 1997) (upholding as constitutional the PLRA limitation that forbids recovery

for mental or emotional damages without a prior showing of physical injury). Nevertheless, at this stage of the proceedings, the court will assume that the plaintiff suffered a compensable injury, despite the absence of any apparent material physical injury. *See Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003): "It would be a serious mistake to interpret Section 1997e(e) to require a showing of physical injury in all prisoner civil rights suits"–such a proposition "would give prison officials free reign to maliciously and sadistically inflict psychological torture on prisoners, so long as they take care not to inflict any physical injury in the process." The plaintiff may also pursue his claim that he was subjected to an unreasonably high amount of smoke and now faces a documentably increased likelihood of future harm as a result of his exposure to the smoke. *See, e.g., Henderson v. Sheahan*, 196 F.3d 839, 847 (7th Cir. 1999) (inmate suing over second-hand tobacco smoke); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (recognizing the possibility of an Eighth Amendment claim based on future serious health problems because of a prison smoking policy).

It strikes the court that the plaintiff's allegations may be significantly exaggerated. The court questions, for example, whether correctional officers would be laughing and joking in the presence of massive clouds of smoke–smoke that would injure the guards as likely as the prisoners. The plaintiff's injuries and potential future health problems likewise seem overstated. Nevertheless, it is not the case that the plaintiff could prove "no set of facts" establishing that he is entitled to relief under 42 U.S.C. 1983. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). The court does not make credibility determinations in connection with a motion to dismiss. *See, e.g., Ruffin v. Kane County Sheriff Dept.*, No. 01 C 4898, 2006 WL 2088186, at *11, n.6 (N.D. Ill. Jul. 21, 2006) (Filip, J.).

## CONCLUSION

In sum, while a more fully developed record may belie the plaintiff's allegations, the complaint sets forth arguable causes of action against the Stateville defendants insofar as they are sued in their individual capacities. For the foregoing reasons, the defendants' motion to dismiss the complaint for failure to state a claim is denied, except as to defendant Walker and to the extent the defendants are sued in their official capacities. This order is not intended to discourage either party from filing a properly completed motion for summary judgment.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss [#55] is granted in part and denied in part. Roger Walker is dismissed as a defendant pursuant to Fed. R. Civ. P. 12(b)(6); the complaint is also dismissed to the extent that the defendants are sued in their official capacities. The plaintiff may proceed against the remaining defendants only to the extent that they are sued in their individual capacities. The defendants are directed to answer or otherwise plead within twenty-one days of the date of this order.

Enter: _____
JAMES B. ZAGEL
United States District Judge

Date: 9/4/07